UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEREK R. PEARSON | ) | CASE NO.  1:06-CV-1974 |
| | ) | |
| Plaintiff | ) | JUDGE OLIVER |
| | ) | |
| v. | ) | |
| | ) | |
| UNIVERSITY HOSPITALS OF | ) | MOTION FOR SUMMARY JUDGMENT |
| CLEVELAND, INC. | ) | OF DEFENDANT UNIVERSITY |
| | ) | HOSPITALS HEALTH SERVICES, INC. |
| Defendant | ) | |

Defendant University Hospitals Health Services, Inc., moves the Court for summary judgment pursuant to Fed. R. Civ. Pro. 56 on the grounds that there are no genuine issues of material fact, and Defendant is entitled to judgment in its favor as a matter of law.  The specific reasons supporting this Motion are set forth in the attached Memorandum in Support.

s/  *Stephanie E. Kennedy*
Barton A. Bixenstine (0034130)
Stephanie E. Kennedy (0069949)
ULMER & BERNE LLP
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, Ohio  44113-1448
Tel (216) 583-7000
Fax (216) 583-7001
E-mail: bbixenstine@ulmer.com
          skennedy@ulmer.com
Trial Attorneys for Defendant University Hospitals Health Services, Inc.

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ...................................................... **Error! Bookmark not defined.**

CERTIFICATION OF TRACK ASSIGNMENT AND COMPLIANCE WITH PAGE LIMITATION .................................................................................................................. v

STATEMENT OF ISSUES TO BE DECIDED AND ARGUMENTS PRESENTED ................. vi

MEMORANDUM IN SUPPORT.................................................................................... 1

I.     INTRODUCTION ................................................................................................. 1

II.    STATEMENT OF FACTS .................................................................................. 1

     A.    Plaintiff's Employment at UHHS ......................................................... 1

     B.    Plaintiff's Alcoholism.......................................................................... 5

III.    LAW AND ARGUMENT ..................................................................................... 6

     A.    Summary Judgment Standard ............................................................. 6

     B.    Plaintiff Has No Evidence of Disability Discrimination ....................... 7

           1.    Plaintiff Fails to State a Prima Facie Case of Disability Discrimination........................................................................ 7

               a.    Plaintiff cannot satisfy the first prong of his prima facie case because Plaintiff was not disabled. .......................................... 8

                    i.    Plaintiff's testimony establishes that he was able to live normally despite his alcoholism; therefore, he is not substantially limited in any major life activity. ............ 9

                    ii.    Plaintiff's drinking binges were sporadic and temporary in nature. .......................................................... 10

                b.    Plaintiff cannot satisfy the second element of his prima facie case because he was not "otherwise qualified" to perform the essential functions of his job with or without a reasonable accommodation. .......................................... 11

                c.    Plaintiff cannot satisfy the third prong of his prima facie case because Plaintiff was not denied a reasonable accommodation for his alcoholism, nor was he subjected to an adverse employment action "because of his medical condition ..................................................... 13

                    i.    Plaintiff was not denied a reasonable accommodation. ............................................................ 13

ii.  Plaintiff was not subjected to an adverse employment action "because of" his alcoholism. ............. 13

2.  UHHS Had Legitimate, Non-discriminatory Reasons for Its Actions Towards Plaintiff. ........................................................................ 14

3.  Plaintiff Cannot Prove that Defendant's Legitimate, Non-discriminatory Reasons Are Pretextual. ....................................................... 15

a.  Plaintiff cannot prove that Defendant's legitimate, non-discriminatory reasons had "no basis in fact. ................................ 15

b.  Plaintiff cannot prove that Defendant's legitimate, non-discriminatory reasons did not "actually motivate" its actions. ........................................................................................ 15

c.  Plaintiff cannot prove that Defendant's legitimate, non-discriminatory reasons were insufficient to motivate its actions. ........................................................................................ 16

C.  UHHS Is Entitled to Summary Judgment on Plaintiff's Claims for Punitive Damages. ......................................................................................................... 16

IV.  CONCLUSION ......................................................................................................... 17

TABLE OF EXHIBIT AUTHENTICATION ............................................................................ 1

TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242, 247-248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986 ............................................. 7

*Bowdish v. Continental Accessories, Inc.,*
    1992 WL 133022 (6th Cir. 1992) ................................................................................. 19

*Carr v. Reno,*
    23 F.3d 525, 529 (D.C. Cir. 1994)( ............................................................................. 14

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 322-23 (1986) ................................................................................. 6, 7

*Cleveland v. Federal Express Corp.,*
    83 Fed.Appx. 74, 2003 WL 22905314 (6th Cir. 2003) ............................................. 16

*Corder v. Lucent Technologies Inc.,*
    162 F.3d 924, 928 (7th Cir. 1998)( ............................................................................. 15

*Cowin v. Lutheran Hosp.,*
    1998 WL 1804974 (N.D.Ohio 1998) ......................................................................... 14

*Gantt v. Wilson Sporting Goods,*
    143 F.3d 1042, 1047 (6th Cir. 1998 ........................................................................... 14

*Hedrick v. Western Reserve Care System,*
    355 F.3d 444 (6th Cir. 2004). ..................................................................................... 8

*Jackson v. Veterans Admin.,*
    22 F.3d 277 (11th Cir. 1994)( ..................................................................................... 14

*Johnson v. New York Medical College,*
    1997 U.S. Dist. LEXIS 14150 (S.D.N.Y. 1997) ....................................................... 12

*Kocsis v. MultiCare Management, Inc.*
    97 F.3d 876, 884 (6th Cir. 1996) ................................................................... 9, 11, 18

*Kolstad v. American Dental Association,*
    119 S.Ct. 2118, 2124 (1999) ....................................................................................... 20

*Maddox v. University of Tennessee,*
    62 F.3d 843, 847 (6th Cir. 1995) ............................................................................... 17

*Malabarba v. Chicago Tribune Co.,*
    149 F.3d 690, 700-701 (7th Cir. 1998) ..................................................................... 13

*Martin v. Barnesville,*
    209 F.3d 931, 934-935 (6th Cir. 2000 ....................................................................... 16

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*
    475 U.S. 574, 586-587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) ........................... 6

*McDonald v. Pennsylvania Dept. of Public Welfare,*
    62 F.3d 92, 97 (3rd Cir. 1995)( ................................................................................. 12

*McKey v. Occidental*
    956 F.Supp. 1313, 1319 (S.D. Tex 1997) ........................................................... vii, 19

*Mitchell v. Toledo Hospital*
    964 F.2d 577, 585-586 (6th Cir. 1992). ............................................................... 7, 19

*Monette v. Electronic Data Sys. Corp.*
    90 F.3d 1173, 1182-83 (6th Cir. 1996) ....................................................................... 8

*O'Neal v. Johns Manville Int'l, Inc.*,
   2005 U.S. Dist. LEXIS 10114 (N.D. Ohio 2005) .................................................. 11
*Partlow v. Blue Coral Slick*,
   2005 Ohio 3849 (8th Dist. 2005) ...................................................................... vii, 19
*Penny v. United Parcel Service*,
   128 F.3d 408, 417 (6th Cir. 1997) ....................................................................... 9, 11
*Rhoads v. Bd. Of Education of Mad River Local Schools*,
   103 Fed. Appx. 888 (6th Cir. 2004) ........................................................................ 11
*Roush v. Weastec, Inc.*,
   96 F.3d 840, 842 (6th Cir. 1996 .......................................................... 8, 12, 13, 15
*Ryan v. Grae & Rybicki*,
   135 F.3d 867 (2nd Cir. 1998) .................................................................................. 12
*Scott v. Harris*,
   550 U.S. __, 2007 U.S. LEXIS 4748, at 14, 15, 75 U.S.L.W. 4297 (April 30, 2007) .............. 7
*Shiplett v. National Railroad Passenger Corp.*,
   1999 U.S. App. LEXIS 14004 (6th Cir. 1999 ....................................................... 11
*St. Mary's Honor Center v. Hicks*,
   509 U.S. 502, 510-511 (1993). ............................................................................... 18
*Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*,
   534 U.S. 184, 122 S.Ct. 681, 690 (2002) ............................................................. 9, 10
*Tyndall v. National Education Centers, Inc.*,
   31 F.3d 209, 213 (4th Cir. 1994)( ........................................................................ 14
*Volcu v. Trionix Research Laboratory, Inc.*,
   993 F.Supp. 623 (N.D. Ohio 1998) ...................................................................... 12

**Statutes**
29 C.F.R. §1630.2(n)(3). ............................................................................................ 13
29 CFR § 1630.2(i) (1995) ........................................................................................... 9
42 U.S.C. § 12102(2)(A). ............................................................................................ 9
42 U.S.C. §12111(8) .................................................................................................. 13.

## **CERTIFICATION OF TRACK ASSIGNMENT AND COMPLIANCE WITH PAGE LIMITATION**

This will certify that this case has been assigned to a "standard" track and that Defendant's Motion for Summary Judgment complies with Local Rule 7.1(f) which states that memoranda relating to dispositive motions must not exceed twenty (20) pages for standard track cases.


*s/Stephanie E. Kennedy*_____
Stephanie E. Kennedy
Counsel for Defendant

## STATEMENT OF ISSUES TO BE DECIDED AND ARGUMENTS PRESENTED

1. Issue:  Whether Plaintiff can establish that he was "disabled" within the meaning of the ADA.  Argument:  Plaintiff cannot establish that he was substantially limited in any major life activity because he testified that he is sober 80-90% of the time, and when sober, Plaintiff leads a completely "normal, peaceful life" wherein none of his major life activities are affected.  (Plaintiff's depo., p. 31-32, 136-137, 139, 141,162-166).

2. Issue:  Whether Plaintiff can establish that he was "otherwise qualified" to perform the essential functions of his job with or without a reasonable accommodation.  Argument:  Plaintiff cannot establish that he was "otherwise qualified" because he was unable to regularly and reliably attend work.  (Exhibits 3, 7, 8, 9, and 10).

3. Issue:  Whether Plaintiff can establish that he was denied a reasonable accommodation for his alcoholism or was subjected to an adverse employment action "because of" his alcoholism.  Argument:  Plaintiff cannot establish this element of his prima facie case because the only accommodation he requested was to be allowed to participate in the EAP program which he did.  (Plaintiff's depo., p. 140).  Also, Plaintiff cannot establish that he was subjected to an adverse employment action "because of" his alcoholism. Numerous documents establish that Plaintiff was terminated due to his excessive absenteeism and violation of his EAP contract.  (Exhibits 3, 4, 5, 7, 8, 9, 10).  Plaintiff has no evidence to the contrary.

4. Issue:  Whether Defendant has legitimate, nondiscriminatory reasons for Plaintiff's termination.  Argument:  The legitimate, nondiscriminatory reasons for Plaintiff's termination are that he had excessive absenteeism and violated his EAP contract.

5. Issue:  Whether Defendant's legitimate, nondiscriminatory reasons for Plaintiff's termination are pretextual.  Argument:  Plaintiff cannot prove that Defendant's legitimate, nondiscriminatory reasons are pretextual.  Plaintiff cannot prove that they have "no basis in fact" because Plaintiff's own testimony and many exhibits establish that Plaintiff was terminated for these reasons.  (Plaintiff's depo., p. 1, 22-27, 33-34, 40, 42-46, 48-50, 54-55, 58-61, and 75; Exhibits 3, 4, 5, 7, 8, 9, and 10).  Moreover, Plaintiff cannot prove that these reasons did not "actually motivate" Defendant's actions because Plaintiff has no evidence to the contrary.  Finally, Plaintiff cannot prove that these reasons were "insufficient to motivate Defendant's actions" because recent case law establishes that an employee's violation of a last chance agreement involving alcohol consumption is a legitimate, nondiscriminatory reason for termination.  *Partlow v. Blue Coral Slick*, 2005 Ohio 3849 (8th Dist. 2005); *McKey v. Occidental*, 956 F.Supp. 1313, 1319 (S.D. Tex. 1997).

6. Issue:  Whether Plaintiff is entitled to punitive damages in connection with his claim of disability discrimination.  Argument:  Plaintiff is not entitled to punitive damages because UHHS makes a "good faith effort" to comply with federal anti-discrimination law by having a comprehensive policy forbidding discrimination and by providing a hotline for an employee to file a complaint, if necessary.

<u>**MEMORANDUM IN SUPPORT**</u>

**I.    INTRODUCTION**

This case is about an employee (Plaintiff) who had at least twenty-nine days of unexcused absences during the eighteen months of his employment with Defendant University Hospitals Health Services Inc. ("UHHS").   During those eighteen months, Plaintiff was repeatedly warned that his unexcused absences ran afoul of UHHS's attendance policy.  In fact, Plaintiff received four written warnings, called "Corrective Actions," which listed the dates of his unexcused absences, UHHS's policy regarding unexcused absences, and the potential consequences of continued unexcused absences, which included termination of employment. After about five months of employment with UHHS, Defendant notified his supervisor, Steven Krall, that he was an alcoholic and requested assistance from the Employee Assistance Program ("EAP").  Plaintiff received continuous assistance, treatment, and support from EAP and signed two contracts with EAP agreeing to refrain from the use of alcohol, submit to random urine screenings on a weekly basis, and fully participate in the treatment programs designed for him by EAP.  After repeated unexcused absences and violations of the EAP contracts signed by Plaintiff, Plaintiff's employment was eventually terminated by UHHS.   Plaintiff has no evidence to support his allegations that UHHS discriminated against him because he was an alcoholic. Therefore, UHHS is entitled to summary judgment in this case.

**II.    STATEMENT OF FACTS**

**A.    Plaintiff's Employment at UHHS**

On June 17, 2004, Plaintiff began his employment with UHHS as a patient transporter. (Plaintiff's depo., p. 11).[1]  As a patient transporter, Plaintiff was required to transport patients from their hospital rooms to other locations within the hospital for tests or x-rays.

---

[1] A copy of the cited pages of Plaintiff's deposition transcript can be found at Exhibit 12.

(Plaintiff's depo., p. 13-14). Plaintiff reported to Steve Krall, the Director of the Patient Transport and Parking Department, and Dannie Dugan Todten, the Patient Transport Supervisor. (Plaintiff's depo., p. 27-28).  Plaintiff also reported to Mary Bush, the lead transporter, on issues of attendance.  (Plaintiff's depo., p. 27-28).

During his orientation, Plaintiff was advised of various UHHS policies, including UHHS's Attendance Policy. (Plaintiff's depo., p. 22-23; Exhibits 1 and 2).  The UHHS Attendance Policy states that:

> If an employee is absent for any reason other than approved time off, the absence counts as an occurrence of absenteeism. . . . Each manager will administer the policy in a fair and consistent manner while using management discretion to determine required action in cases of absenteeism issues. . . . Any employee who accumulates three occurrences of unscheduled absence in any consecutive four month period or less will be subject to progressive correction action up to and including discharge.

(Exhibit 1).  Plaintiff acknowledged receiving this Attendance Policy and knowing that he would be subject to discipline if he did not comply with the policy. (Plaintiff's depo., p. 22-24).

Plaintiff's ninety day probationary period as a new employee was uneventful. However, in November of 2004, Plaintiff incurred his first series of unexcused absences. Plaintiff was absent on November 4, 5, 8, and 9.  (Exhibit 3; Plaintiff's depo., p. 25-27).  During these absences, Plaintiff talked to his supervisor, Dannie Dugan-Todten, who told him that his absences were unexcused and would be counted against him pursuant to the Attendance Policy. (Plaintiff's depo., p. 33-34).  On November 12, 2004, Plaintiff received his first Corrective Action for unexcused absences.  (Exhibit 3).  This Corrective Action listed Plaintiff's dates of absence, the section of the Attendance Policy that was violated, and stated that "further instances will result in further corrective action up to and including discharge." (Exhibit 3). Plaintiff signed this Corrective Action on November 12, 2004.  (Exhibit 3; Plaintiff's depo., p. 40).

On November 16, 2004, Plaintiff notified the head of his department, Steve Krall, that he was an alcoholic and began treatment for alcoholism through UHHS's Employee Assistance Program ("EAP").  The EAP referred Plaintiff to St. Vincent Charity Hospital's Rosary Hall, an addiction treatment facility, for intensive outpatient therapy. (Plaintiff's depo., p. 171). On December 9, 2004, Plaintiff signed his first contract with EAP, agreeing to:  (1) "attend all scheduled appointments and comply with the recommendations by the provider of treatment;" (2) "remain abstinent of all mood altering substances, particularly alcohol, for the duration of my employment at UHHS;"  and (3) "provide observed urine and/or blood screening as requested by my supervisor or individual acting on their behalf, or the EAP whenever requested for at least a two year period or longer whenever any such person has reason to believe such a test is appropriate," among other things.  (Exhibit 4; Plaintiff's depo., p. 42-44).  The contract further stated that "I understand that any deviations from the above stated expectations will result in further corrective action, including possible discharge from my job at the election of UHHS." (Exhibit 4; Plaintiff's depo., p. 44).  In order to comply with the urine screening provision of the contract, Plaintiff had to call the EAP office every Monday, Wednesday, and Friday.  Each day, the EAP secretary would tell Plaintiff whether he had to provide a urine specimen to be screened for alcohol that day.  (Plaintiff's depo., p. 48-50).  Failure to provide a urine screening that day would result in a breach of the contract which could result in termination.  (Plaintiff's depo., p. 49-50).  Plaintiff testified that he understood all of these provisions when he signed the EAP contract.  (Plaintiff's depo., p. 43-44).

At the beginning of 2005, Plaintiff received his 2004 performance evaluation which noted Plaintiff had incurred attendance violations after the expiration of his probationary period. (Exhibit 6).  However, his evaluation also noted that Plaintiff "requested and received a

3

referral to EAP and appears to be doing much better and is complying with the developed action plan." (Exhibit 6).  Plaintiff remained in compliance with UHHS's Attendance Policy until the second quarter of 2005.

However, during the second quarter of 2005, Plaintiff accrued unexcused absences on April 4 and 6, May 12, 13, and 16, and June 4, 5, 6, and 9. (Exhibits 7 and 8; Plaintiff's depo., p. 54-55).   Plaintiff received two separate Corrective Actions for these nine days of unexcused absences, both of which he signed.  (Exhibits 7 and 8; Plaintiff's depo., p. 58, 60-61).  These Corrective Actions both listed Plaintiff's dates of absence, the section of the Attendance Policy that was violated, and stated that "further instances will result in further corrective action up to and including discharge." (Exhibits 7 and 8).

The third quarter of 2005 was equally problematic for Plaintiff.  Plaintiff accrued unexcused absences on July 17, 19, and 20, August 17, 18, and 19, and September 5, 6, 7, 8, 10, 11, and 12.  (Exhibit 9).

On September 14, 2005, Plaintiff was admitted to St. Vincent Charity Hospital's Rosary Hall for inpatient detoxification treatment for alcoholism.  (Plaintiff's depo., p. 212). On September 20, 2005, Plaintiff again sought assistance from the EAP program after his supervisor, Mr. Krall, gave him a mandatory referral to EAP.  (Exhibit 5; Plaintiff's depo., p. 44-46).   In connection with this mandatory referral, Plaintiff agreed that if he was non-compliant with EAP's assessment and treatment plan, EAP could notify his supervisor of this fact.  (Exhibit 5; Plaintiff's depo., p. 44-46).   Plaintiff further agreed that "non-compliance with treatment requirements may result in corrective action up to and including discharge."   (Exhibit 5; Plaintiff's depo., p. 44-46).   In connection with this EAP contract, Plaintiff again agreed to

4

comply with EAP's substance abuse screening program and provide urine samples for screening at random.  (Exhibit 5; Plaintiff's depo., p. 44-46).

On September 23, 2005, Plaintiff received his fourth Corrective Action, a final warning, for his absences in the third quarter of 2005. (Exhibit 9).  This Corrective Action listed Plaintiff's dates of absence, the section of the Attendance Policy that Plaintiff violated, and stated that this was a "final warning" and "further instances of UPTO [unpaid time off] or absenteeism may result in further corrective action up to and including discharge."  (Exhibit 9).

On November 29, 2005, Plaintiff began treatment for his alcoholism at Addiction Recovery Services, a division of UHHS. (Plaintiff's depo., p. 205).  Plaintiff attended his mandatory treatment sessions until early January of 2006 when he was absent without notification from the treatment program. (Exhibit 10). Moreover, Plaintiff did not participate in his mandatory urine screenings during this time.  (Plaintiff's depo., p. 75; Exhibit 10).  Also in early January of 2006, Plaintiff accrued three more unexcused absences on January 2, 3, and 4. (Exhibit 10). On January 10, 2006, Plaintiff's employment with UHHS was terminated due to his excessive absenteeism and failure to comply with the EAP contract he had signed.  (Exhibit 10).

### B.    Plaintiff's Alcoholism

Plaintiff testified that as an alcoholic, he has periods of time when he is sober and periods of time when he is actively drinking.  (Plaintiff's depo., p. 31-32).  Plaintiff testified that over the last five years, from 2002 to 2007, he has been sober 80% to 90% of that time. (Plaintiff's depo., p. 162).  Plaintiff stated that when he is sober, he is able to live a "normal, peaceful life."  (Plaintiff's depo., p. 139).  Only when he is drinking does alcoholism affect his

life.  (Plaintiff's depo., p. 139).  Plaintiff testified that his alcoholism never affected his ability to

do his job at UHHS or for any other employer.  (Plaintiff's depo., p. 136-137, 141).  Plaintiff also

testified that he did not request any type of accommodation for his alcoholism except for the

ability to participate in the EAP program, which he did.  (Plaintiff's depo., p. 140).  Plaintiff

further testified that his major life activities of walking, seeing, learning, breathing, hearing,

communicating, speaking, caring for himself, and performing manual tasks were only slightly

impaired while he was intoxicated which only occurred about 10% of the time. (Plaintiff's depo.,

p. 163-166).  Indeed, during the 90% of the time, when Plaintiff was sober, his alcoholism did

not affect his ability to participate in any activities or perform any major life activities.

(Plaintiff's depo., p. 166-167).

## III.    LAW AND ARGUMENT

### A.    Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue of material fact.

Fed. R. Civ. P. 56 (c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).  The United States

Supreme Court recently clarified the meaning of "genuine issue of material fact" as follows:

> At the summary judgment phase, facts must be viewed in the light most
> favorable to the nonmoving party only if there is a "genuine" dispute as to
> those facts. Fed. Rule Civ. Proc. 56(c).  As we have emphasized, "when
> the moving party has carried its burden under Rule 56(c), its opponent
> must do more than simply show that there is some metaphysical doubt as
> to the material facts . . . .  Where the record taken as a whole could not
> lead a rational trier of fact to find for the nonmoving party, there is
> no 'genuine issue for trial'"  *Matsushita Elec. Industrial Co. v. Zenith
> Radio Corp*., 475 U.S. 574, 586-587, 106 S. Ct. 1348, 89 L. Ed. 2d 538
> (1986) (footnote omitted).  "The mere existence of *some* alleged factual
> dispute between the parties will not defeat an otherwise properly
> supported motion for summary judgment; the requirement is that there be
> no *genuine* issue of *material* fact*." Anderson v. Liberty Lobby, Inc.,* 477
> U.S. 242, 247-248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  When
> opposing parties tell two different stories, one of which is blatantly
> contradicted by the record, so that no reasonable jury could believe it, a

court should not adopt that version of facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris*, 550 U.S. __, 2007 U.S. LEXIS 4748, at 14, 15, 75 U.S.L.W. 4297 (April 30, 2007)(attached as Exhibit 13).  Indeed, Plaintiff's mere conclusory allegations or personal beliefs of discrimination are insufficient to withstand a motion for summary judgment.  *Mitchell v. Toledo Hospital,* 964 F.2d 577, 585-586 (6th Cir. 1992).  Where the Plaintiff is unable to produce sufficient evidence beyond the bare allegations of the Complaint to support an essential element of his case, summary judgment is appropriate.  *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  According to this weighty standard, and the undisputed facts of this case, Defendant is entitled to summary judgment on Plaintiff's disability discrimination and punitive damages claims.

> **B.**     **Plaintiff Has No Evidence of Disability Discrimination**

Plaintiff alleges that UHHS terminated his employment in violation of the Americans With Disabilities Act ("ADA").  However, Plaintiff cannot establish a prima facie case of disability discrimination with respect to these allegations, nor can Plaintiff establish that the legitimate, non-discriminatory reasons for Plaintiff's discharge – his excessive absenteeism and violation of his EAP contract – are pretextual.  Therefore, Defendant is entitled to summary judgment on Plaintiff's disability discrimination claim.

> **1.**     **Plaintiff Fails to State a Prima Facie Case of Disability Discrimination**

In order for Plaintiff to avoid the entry of summary judgment against him, he must establish a prima facie case by proving that (1) he was "disabled" within the meaning of the ADA, (2) he was "otherwise qualified" to perform the essential functions of the job, with or without a reasonable accommodation, and (3) he was denied a reasonable accommodation for his disability or was subjected to an adverse employment action solely by reason of his disability.

*Roush v. Weastec, Inc.,* 96 F.3d 840, 842 (6th Cir. 1996).  Indeed, the Sixth Circuit has recently reaffirmed that a plaintiff bringing a case under the ADA must establish that disability discrimination was the <u>sole</u> reason for the adverse action.  *Hedrick v. Western Reserve Care System,* 355 F.3d 444 (6th Cir. 2004).  Plaintiff has both the burden of proof and the burden of persuasion with respect to all three elements of his *prima facie* case.  *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1182-83 (6th Cir. 1996).  If Plaintiff fails to prove (and persuade) that there is a genuine issue of material fact as to whether all three elements have been satisfied, Defendant is entitled to summary judgment.

> **a.    Plaintiff cannot satisfy the first prong of his prima facie case because Plaintiff was not disabled.**

Plaintiff claims that his alcoholism renders him "disabled."  To qualify as "disabled," Plaintiff must have "a physical or mental impairment that substantially limits one or more of the major life activities of such individual."  42 U.S.C. § 12102(2)(A).  Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 CFR § 1630.2(i) (1995).  The individual must prove that the limitation is substantial.  *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 690 (2002).  Pursuant to regulations interpreting the ADA:

> "substantially limit[ed]" means "[u]nable to perform a major life activity that the average person in the general population can perform"; or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."  29 CFR § 1630.2(j) (2001).  In determining whether an individual is substantially limited in a major life activity, the regulations instruct that the following factors should be considered:  "[t]he nature and severity of the impairment; [t]he duration or expected duration of the impairment; and [t]he permanent or long-term impact, or the expected

8

permanent or long-term impact of or resulting from the impairment." §§ 1630.2(j)(2)(i)-(iii).

*Williams*, 122 S.Ct. at 690. When a plaintiff testifies at his deposition that his medical condition does not limit his activities, that person is not "disabled" within the meaning of the Act. *Kocsis v. MultiCare Management, Inc.,* 97 F.3d 876, 884 (6th Cir. 1996); accord *Penny v. United Parcel Service,* 128 F.3d 408, 417 (6th Cir. 1997) (holding that deposition testimony which establishes that plaintiff led an active life seriously undermines Plaintiff's claim that he is "disabled").

> **i.    Plaintiff's testimony establishes that he was able to live normally despite his alcoholism; therefore, he is not substantially limited in any major life activity.**

Plaintiff's deposition testimony establishes that his alcoholism is not "substantially limiting." Plaintiff testified that as an alcoholic, he has periods of time when he is undergoing treatment that he is sober and periods of time when he is actively drinking. (Plaintiff's depo., p. 31-32). Plaintiff stated that when he is sober, he is able to live a "normal, peaceful life." (Plaintiff's depo., p. 139). Only when he is drinking does alcoholism affect his life. (Plaintiff's depo., p. 139). Plaintiff further testified that over the last five years, from 2002 to 2007, he has been sober 80% to 90% of that time. (Plaintiff's depo., p. 162).

Plaintiff also testified that his alcoholism never affected his ability to do his job at UHHS or for any other employer. (Plaintiff's depo., p. 136-137, 141). Plaintiff further testified that his major life activities of walking, seeing, learning, breathing, hearing, communicating, speaking, caring for himself, and performing manual tasks were only slightly impaired while he was intoxicated, which only occurred about 10% of the time. (Plaintiff's depo., p. 163-166). Indeed, during the 90% of the time that Plaintiff was sober, his alcoholism did not affect his ability to participate in any activities or perform any major life activities. (Plaintiff's depo., p. 166-167).

Plaintiff's testimony clearly establishes that he is not substantially limited in any major life activity. *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 690 (2002). When a plaintiff testifies at his deposition that his medical condition does not limit his activities, that person is not "disabled" within the meaning of the Act. *Kocsis v. MultiCare Management, Inc.,* 97 F.3d 876, 884 (6th Cir. 1996); accord *Penny v. United Parcel Service,* 128 F.3d 408, 417 (6th Cir. 1997) (holding that deposition testimony which establishes that plaintiff led an active life seriously undermines plaintiff's claim that he is "disabled"). Indeed, the Sixth Circuit has repeatedly refused to recognize a medical condition as a disability when the plaintiff could not show that his condition "substantially limited a major life activity." *Martin v. Barnesville Bd. Of Education*, 209 F.3d 931 (6th Cir. 2000*); Rhoads v. Bd. Of Education of Mad River Local Schools*, 103 Fed. Appx. 888 (6th Cir. 2004); *Shiplett v. National Railroad Passenger Corp.*, 1999 U.S. App. LEXIS 14004 (6th Cir. 1999 (attached as Exhibit 14); *O'Neal v. Johns Manville Int'l, Inc.,* 2005 U.S. Dist. LEXIS 10114 (N.D. Ohio 2005) (attached as Exhibit 15). Therefore, Plaintiff cannot establish the first prong of his disability discrimination claim, and Defendant is entitled to summary judgment.

### ii.    Plaintiff's drinking binges were sporadic and temporary in nature.

Moreover, Plaintiff has only been actively drinking about 10% (to at most 20%) of the time over the last five year period, according to his testimony. (Plaintiff's depo., p. 162-166). These episodes of drinking were sporadic and temporary in nature. Thereafter, when Plaintiff was sober, he resumed his ability to fully engage in all major life activities. (Plaintiff's depo., p. 163-167). Courts have repeatedly held that conditions which cause sporadic flare-ups that are temporary in nature do not render a plaintiff "disabled" within the meaning of the ADA. *Ryan v. Grae & Rybicki,* 135 F.3d 867 (2nd Cir. 1998) (holding that plaintiff was not disabled

because her condition was "symptomatic only at certain times and can be asymptomatic for long periods"); *Johnson v. New York Medical College,* 1997 U.S. Dist. LEXIS 14150 (S.D.N.Y. 1997) (attached as Exhibit 16) (holding that plaintiff who experienced lengthy remissions was not "disabled"); *Roush,* 96 F.3d at 843 (stating "[g]enerally, short term, temporary conditions are not substantially limiting"); *Volcu v. Trionix Research Laboratory, Inc.,* 993 F.Supp. 623 (N.D. Ohio 1998) (commenting that it is well established that the ADA was never intended to apply to persons suffering from temporary conditions or injuries); *McDonald v. Pennsylvania Dept. of Public Welfare*, 62 F.3d 92, 97 (3rd Cir. 1995)(finding no claim for disability discrimination where inability to work was of limited duration).  Accordingly, Plaintiff was not "disabled" within the meaning of the ADA, and Defendant is entitled to summary judgment

> **b.** **Plaintiff cannot satisfy the second element of his prima facie case because he was not "otherwise qualified" to perform the essential functions of his job with or without a reasonable accommodation.**

In order to satisfy a *prima facie* case of disability discrimination, Plaintiff must prove that he is capable of performing the essential functions of his job with or without a reasonable accommodation. 42 U.S.C. §12111(8); *Roush v. Weastec, Inc.,* 96 F.3d 840, 842 (6th Cir. 1996) A disabled employee will not be qualified for a position, and thus will not be entitled to the protection of the ADA, unless he can perform the job's core functions.  *Malabarba v. Chicago Tribune Co.,* 149 F.3d 690, 700-701 (7th Cir. 1998).  "Essential functions" are those functions that bear more than a marginal relationship to the job at issue. *Chandler v. City of Dallas,* 2 F.3d 1385, 1393 (5th Cir. 1993).  Factors to consider in determining whether a function is "essential" include the employer's judgment as to which functions are "essential," job descriptions, the amount of time spent on the job performing the function, and the consequences if the individual is not required to perform the function.  29 C.F.R. §1630.2(n)(3).

11

The Sixth Circuit has repeatedly held that regular attendance is an essential function of almost every job.  Therefore, employees who are unable to meet the job requirements of reliability and regular attendance are not "otherwise qualified" under the ADA.  *See Gantt v. Wilson Sporting Goods,* 143 F.3d 1042, 1047 (6th Cir. 1998 (holding that "an employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA."); *Cowin v. Lutheran Hosp.*, 1998 WL 1804974 (N.D.Ohio 1998) (attached as Exhibit 17) ("ability to appear at work is an essential element of performing a job and, thus, an employee who is routinely absent from work is not able to perform the essential functions of a job."); *Carr v. Reno,* 23 F.3d 525, 529 (D.C. Cir. 1994)(holding that coming to work is an essential function); *Jackson v. Veterans Admin.,* 22 F.3d 277 (11th Cir. 1994)(holding that an employee with a history of sporadic unpredictable absences is not otherwise qualified); *Tyndall v. National Education Centers, Inc.,* 31 F.3d 209, 213 (4th Cir. 1994)(holding that "except in the unusual case where an employee can effectively perform all work-related duties at home, an employee who does not come to work cannot perform any of his job functions, essential or otherwise).

Certainly, regular attendance was an essential function of Plaintiff's job.  Plaintiff was employed as a patient transporter.  (Plaintiff's depo., p. 4-14).  If Plaintiff was not present at work, obviously he could not transport patients within the hospital.  Accordingly, to establish the second prong of his *prima facie* case and survive summary judgment, Plaintiff must establish that at the time of his termination, he was able to attend work reliably.  *Corder v. Lucent Technologies Inc.,* 162 F.3d 924, 928 (7th Cir. 1998)(affirming summary judgment for Defendant because plaintiff could not perform at least one essential function of her job - attendance at work).

12

The undisputed facts establish that Plaintiff was unable to perform this essential function of his job.  During the eighteen months of his employment, Plaintiff had at least 29 days of sporadic unexcused absences (Exhibits 3, 7, 8, 9, and 10).  Therefore, he was not otherwise "qualified" for his position as a patient transporter because he was unable to perform an essential function of his position – regular attendance.  Accordingly, Plaintiff cannot satisfy the second element of his prima facie case, and Defendant is entitled to summary judgment.

> **c.  Plaintiff cannot satisfy the third prong of his prima facie case because Plaintiff was not denied a reasonable accommodation for his alcoholism, nor was he subjected to an adverse employment action "because of his medical condition."**

Even if Plaintiff somehow proves that he was disabled, his disability discrimination claim still fails because he cannot satisfy the third prong of his prima facie case – that he was denied a reasonable accommodation for his disability or was subjected to an adverse employment action solely by reason of his disability.  *Roush*, 96 F.3d at 842.

> **i.  Plaintiff was not denied a reasonable accommodation.**

The ADA requires that employers provide qualified employees with a reasonable accommodation which would not impose an undue hardship on the employer's business.  *See, e.g. Cleveland v. Federal Express Corp.*, 83 Fed.Appx. 74, 2003 WL 22905314 (6th Cir. 2003) (attached as Exhibit 18).  Plaintiff was not denied a reasonable accommodation for his medical conditions.  Plaintiff testified that the only accommodation he requested was that he be allowed to participate in the EAP program, which he did.  (Plaintiff's depo., p. 140).  Therefore, Plaintiff cannot establish this element of his prima facie case.

> **ii.  Plaintiff was not subjected to an adverse employment action "because of" his alcoholism.**

Plaintiff also cannot establish the third prong of his prima facie case because he was not subjected to an adverse employment action "because of" his medical conditions.

Plaintiff was terminated from his employment because of his excessive absenteeism and the violation of his EAP contract.  (Exhibit 10).  Plaintiff does not dispute that his absences were unexcused, nor does he dispute that he violated the EAP contract.  Plaintiff was terminated solely for these reasons.  Plaintiff may argue that his excessive absenteeism and violation of his EAP contract were related to his alcoholism; and, therefore, Plaintiff's alcoholism caused his termination.  The Sixth Circuit has specifically rejected this argument by holding that "an employer may hold an alcoholic employee to the same performance and behavior standards to which the employer holds other employees even if any unsatisfactory performance is related to the alcoholism of the employee."  *Martin v. Barnesville*, 209 F.3d 931, 934-935 (6th Cir. 2000 citing *Maddox v. University of Tennessee*, 62 F.3d 843, 847 (6th Cir. 1995).  Therefore, Plaintiff cannot establish this element of his prima facie case, and Defendant is entitled to summary judgment on Plaintiff's disability discrimination claim.

> **2.**    **UHHS Had Legitimate, Non-discriminatory Reasons for Its Actions Towards Plaintiff.**

Even if Plaintiff is somehow able to establish a prima facie case of disability discrimination, UHHS is still entitled to summary judgment because it had legitimate, non-discriminatory reasons for its actions which Plaintiff cannot prove are pretextual.  As mentioned above, Plaintiff was terminated because of his excessive absenteeism and violation of his EAP contract. (Exhibit 10).  It is undisputed that Plaintiff absences were unexcused and that he violated his EAP contract.  These are legitimate, non-discriminatory reasons for Plaintiff's termination.

### 3.   Plaintiff   Cannot   Prove   that   Defendant's   Legitimate,   Non-discriminatory Reasons Are Pretextual.

Once the employer discharges its burden of asserting a legitimate, non-discriminatory reason for its actions, the plaintiff must demonstrate that the employer's stated reason was a pretext for discrimination. *Kocsis*, 97 F.3d at 883; *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 510-511 (1993).   More specifically, "a plaintiff must produce enough evidence that a jury could reasonably reject the employer's explanation for its decisions." *Kocsis*, 97 F.3d at 883. In the Sixth Circuit:

> to raise a genuine issue of material fact on the validity of an employer's explanation for an adverse job action, the plaintiff must show, again by a preponderance of the evidence, either (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the action; or (3) that they were insufficient to motivate the action.  At all times, the plaintiff bears the ultimate burden of persuading the trier of fact that illegal discrimination took place.

*Id.* (emphasis added). Plaintiff cannot establish pretext by any of these three methods. Therefore, Defendant is entitled to summary judgment.

### a.   Plaintiff cannot prove that Defendant's legitimate, non-discriminatory reasons had "no basis in fact."

It would be futile for Plaintiff to try to prove that UHHS's legitimate, non-discriminatory reasons for Plaintiff's termination had "no basis in fact." As discussed above, Plaintiff's own testimony and many documents clearly establish that Plaintiff was terminated because of his excessive absenteeism and violation of his EAP contract.  (Exhibits 1, 2, 3, 4, 5, 7,8, 9, 10; Plaintiff's depo., p. 1, 22-27, 33-34, 40, 42-46, 48-50, 54-55, 58-61, and 75).

### b.   Plaintiff cannot prove that Defendant's legitimate, non-discriminatory reasons did not "actually motivate" its actions.

Plaintiff has no evidence that UHHS's legitimate, non-discriminatory reasons did not "actually motivate" its actions towards Plaintiff.  All of the evidence in this case supports the

fact that Plaintiff's termination was a result of his excessive absenteeism and violation of his EAP contract. (Exhibits 1, 2, 3, 4, 7,8, 9, 10; Plaintiff's depo., p. 1, , 22-27, 33-34, 40, 42-46, 48-50, 54-55, 58-61, and 75).  Plaintiff's subjective beliefs that he was the victim of disability discrimination are not sufficient to raise a genuine issue with regard to intentional discrimination. *Bowdish v. Continental Accessories, Inc.,* 1992 WL 133022 (6th Cir. 1992) (attached as Exhibit 19).  Moreover, "courts have repeatedly held that the Plaintiff's denial of the defendant's articulated legitimate reason without producing substantiation for the denial is insufficient" to withstand a motion for summary judgment. *Mitchell*, 964 F.2d at 585.

> **c.      Plaintiff cannot prove that Defendant's legitimate, non-discriminatory reasons were insufficient to motivate its actions.**

Finally, in light of recent precedent and common sense, Plaintiff can hardly argue that his excessive absenteeism and violation of his EAP contract were "insufficient" reasons for his termination.   *Partlow v. Blue Coral Slick*, 2005 Ohio 3849 (8th Dist. 2005) (holding that Plaintiff's violation of a last chance agreement setting conditions on his return-to-work after addiction treatment was a sufficiently legitimate, non-discriminatory reason for his termination and did not violate the ADA);  See also *McKey v. Occidental,* 956 F.Supp. 1313, 1319 (S.D. Tex 1997) (holding that return-to-work agreement after treatment for alcoholism was valid and termination for violation of same did not run afoul of ADA).  Consequently, Plaintiff cannot establish that Defendant's legitimate, non-discriminatory reasons were pretextual.  For all the foregoing reasons, Defendant is entitled to summary judgment on Plaintiff's claims of disability discrimination.

**C.      UHHS Is Entitled to Summary Judgment on Plaintiff's Claims for Punitive Damages.**

Punitive damages are not available in all cases where intentional discrimination is alleged.  *Kolstad v. American Dental Association,* 119 S.Ct. 2118, 2124 (1999).  In order to

recover punitive damages under the ADA, Plaintiff must demonstrate that Defendant "engaged in a discriminatory practice . . . with malice or with reckless indifference" to his federally protected rights.  *Kolstad,* 119 S.Ct. at 2124.  The terms "malice" and "reckless indifference" pertain to "the employer's knowledge that it might be acting in violation of federal law."  *Id.* Thus, in order to be eligible for punitive damages, Plaintiff must prove that Defendant had a "subjective consciousness of a risk of injury or illegality and a criminal indifference to civil obligations."  *Id.*  The Supreme Court has held that an employer who "<u>engages in good faith efforts</u>" to comply with federal law "<u>demonstrates that it never acted in reckless disregard of federally protected rights</u>."  *Id.* at 2128-2129.  Thus, an employer who engages in good faith efforts to comply with federal law is not liable for punitive damages.  *Id.*

UHHS makes more than a "good faith" effort to comply with federal law. UHHS maintains an entire section of its employee handbook devoted entirely to equal opportunity and anti-discrimination issues.  (Exhibit 11).   Further, UHHS has a complaint hotline for employees to report suspected cases of discrimination or harassment. (Exhibit 11). These complaints are promptly investigated.  (Exhibit 11).  Indeed, UHHS readily engages in good faith efforts to insist that its employees comply with federal law.  Thus, UHHS is not liable for punitive damages.  *Kolstad,* 119 S.Ct. at 2128-2129.

## IV.     CONCLUSION

For the foregoing reasons, UHHS is entitled to summary judgment on all of Plaintiff's claims.

s/ *Stephanie E. Kennedy*
Barton A. Bixenstine (0034130)
Stephanie E. Kennedy (0069949)
ULMER & BERNE LLP
Skylight Office Tower

17

1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1448
Tel (216) 583-7000
Fax (216) 583-7001
Email:  bbixenstine@ulmer.com
             skennedy@ulmer.com
Trial Attorneys for Defendant

<u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on August 14, 2007, a copy of Defendant's Motion for Summary Judgment was electronically filed.  Notice of the filing will be sent to counsel of record for all parties by operation of the Court's Electronic Filing System.  Parties and their counsel may access this filing through the Court's Electronic Filing System.  A copy was sent by regular mail to all counsel of record not registered for electronic filing.  Counsel of record is:

    Lance B. Johnson, Esq.
    1944 Epping Road
    Gates Mills, Ohio 44040
    Tel 440-423-1782
    Fax 440-378-4700
    lbjatt@americtech.net

    Trial Attorney for Plaintiff


        s/ *Stephanie E. Kennedy*
        One of the Trial Attorneys for Defendant

1648405v1
28650.00028

19

## <u>TABLE OF EXHIBIT AUTHENTICATION</u>

1. Exhibit 1, UHHS's attendance policy, was authenticated by Plaintiff in his deposition. (Plaintiff's depo., p. 22, Exhibit 8).
2. Exhibit 2, Plaintiff's department orientation form, was authenticated by Plaintiff in his deposition.  (Plaintiff's depo., p. 23, Exhibit 9).
3. Exhibit 3, Plaintiff's first Corrective Action form, was authenticated by Plaintiff in his deposition.  (Plaintiff's depo., p. 40, Exhibit 12).
4. Exhibit 4, Plaintiff's first "Conditions of Employment" contract with EAP, was authenticated by Plaintiff in his deposition.  (Plaintiff's depo., p. 42, Exhibit 13).
5. Exhibit 5, Plaintiff's second "Condition of Employment" contract with EAP, was authenticated by Plaintiff in his deposition.  (Plaintiff's depo., p. 44, Exhibit 14).
6. Exhibit 6, Plaintiff's 2004 Performance Appraisal, was authenticated by Plaintiff in his deposition.  (Plaintiff's depo., p. 53, Exhibit 17).
7. Exhibit 7, Plaintiff's second Corrective Action, was authenticated by Plaintiff in his deposition.  (Plaintiff's depo., p. 58, Exhibit 22).
8. Exhibit 8, Plaintiff's third Corrective Action, was authenticated by Plaintiff in his deposition.  (Plaintiff's depo., p. 60, Exhibit 25).
9. Exhibit 9, Plaintiff's fourth and Final Corrective Action, was authenticated by Plaintiff in his deposition.  (Plaintiff's depo., p. 63, Exhibit 28).
10. Exhibit 10, an e-mail from Steve Krall to Swan Khanna Salehi, was produced by Defendant in connection with Defendant's initial disclosures.  Pursuant to Fed. R. Evid. 901(a), documentary evidence is properly authenticated when it is produced from a party's files and deals with a subject matter and time period relevant to the case.  *Brown v. Williamson Tobacco Corp. v. Jacobson,* 644 F. Supp. 1240, 1253 (N.D. Ill. 1986), *aff'd in part, rev'd in part on other grounds*, 827 F.2d 1119 (7th Cir. 1987).
11. Exhibit 11, UHHS's Anti-Discrimination policy, was produced by Defendant in connection with Plaintiff's discovery requests.  Pursuant to Fed. R. Evid. 901(a), documentary evidence is properly authenticated when it is produced from a party's files and deals with a subject matter and time period relevant to the case.  *Brown v. Williamson Tobacco Corp. v. Jacobson,* 644 F. Supp. 1240, 1253 (N.D. Ill. 1986), *aff'd in part, rev'd in part on other grounds*, 827 F.2d 1119 (7th Cir. 1987).
12. Exhibit 12, cited pages of Plaintiff's deposition transcript, does not require authentication.
13. Exhibit 13, a copy of an unreported case, does not require authentication.
14. Exhibit 14, a copy of an unreported case, does not require authentication.
15. Exhibit 15, a copy of an unreported case, does not require authentication.
16. Exhibit 16, a copy of an unreported case, does not require authentication.
17. Exhibit 17, a copy of an unreported case, does not require authentication.
18. Exhibit 18, a copy of an unreported case, does not require authentication.
19. Exhibit 19, a copy of an unreported case, does not require authentication.